HEARD NOVEMBER TERM, 1875.

## South Carolina Railroad Company *vs.* Wilmington, Columbia and Augusta Railroad Company.

Where a Judge declines to charge certain propositions submitted by counsel, and it appears by the record that he was apprised of the intention to rely on the propositions advanced by way of exception to the charge, that is sufficient to constitute an exception, though there was no formal request to note an exception.

Exceptions must be made before the jury retire to their room or they cannot be heard on appeal.

A and B, two railroad companies, entered into a contract, under seal, by which B was admitted to the permanent use, jointly with A, of a portion of the track owned by A, on certain terms therein expressed. The portion of the track subject to the contract was used by A and B jointly for some time until B, becoming insolvent, its franchise, together with its line of road and all its tangible property, was sold and purchased by C, another and distinct railroad company, and thereupon C used for some time the said portion of A's track, but afterwards abandoned its use: *Held,* That C had become liable to A to perform obligations which the terms of the contract imposed upon B.

The fact that C did not claim the use of the portion of the road subject to the contract and had given notice that it renounced the benefits of the contract did not discharge C from its obligations under the contract.

A temporary arrangement between A and B by which for a time the requirements of the contract as to certain matters were not to apply: *Held,* Not to destroy the contract.

C became the purchaser under a decree to foreclose certain mortgages, some of which bore date before the contract between A and B: *Held,* That this did not discharge C from its obligations under the contract.

BEFORE GRAHAM, J., AT CHARLESTON, MARCH, 1874.

This was an action by the South Carolina Railroad Company against the Wilmington, Columbia and Augusta Railroad Company.

The case will be sufficiently understood from the complaint and answer, the exceptions to the Judge's charge and the opinion of the Court.

The complaint alleged :

I. That in and by an Act of the Legislature of the State of South Carolina, ratified the 18th day of December, 1844, the plaintiffs' were authorized to construct a branch of their road to the town of Camden, and that they did shortly after construct a branch of their road from Kingville to Camden. That the lands and rights of way used in and for the construction of said branch were and are owned by the said plaintiffs solely.

II. That the Wilmington and Manchester Railroad Company was a body corporate, authorized, under its charter, to construct a railroad from Wilmington, in the State of North Carolina, to Manchester, in the State of South Carolina, or some point near that place.

III. That on the 22d day of August, 1853, the plaintiffs and the Wilmington and Manchester Railroad Company made and executed the following contract :

"STATE OF SOUTH CAROLINA.

"1st. This agreement, made and entered into this twenty-second day of August, in the year eighteen hundred and fifty-three, between the South Carolina Railroad Company of the one part, and the Wilmington and Manchester Railroad Company of the other part, witnesseth :

" That the South Carolina Railroad Company agrees to admit the Wilmington and Manchester Railroad Company to the joint, permanent and mutual use of so much of the 'Camden Branch' of their road as extends from the junction of the Columbia and Camden branches to the junction of said Camden branch with the Wilmington and Manchester road, upon the terms, conditions and covenants hereinafter expressed of and concerning the same.

"2d. The said Wilmington and Manchester Railroad Company, in consideration of the joint and mutual use of so much of the road

of the said South Carolina Railroad Company granted them as aforesaid, agrees to pay to the said South Carolina Railroad Company one-half of the estimated cost of the construction of the said road as extends from the said junction of the Columbia and Camden branches to the Wateree River, which cost is hereby fixed and ascertained to amount to $14,000 per mile. And the said Wilmington and Manchester Railroad Company agree to pay to the South Carolina Railroad Company one-half of the estimated cost (or $7,000 per mile) in three equal annual instalments, with interest thereon from the time hereinafter mentioned, and to execute and deliver their coupon bonds, with seven per cent interest thereon, payable in one, two and three years, or at time or times (not exceeding ten years) as the South Carolina Railroad Company may require.

"3d. And the said South Carolina Railroad Company agrees to construct a road through the Wateree Swamp and a bridge over the Wateree River, from the termination of the section of the road above referred to, to the junction of the Camden branch with the Wilmington and Manchester Road, said road to be constructed on the plan of the road through the Congaree Swamp, (this plan to be subject to the modifications of the Superintendents of the two roads hereafter,) the work to be constructed under the direction of the engineer of the South Carolina Railroad Company, who shall be authorized to confer freely with the engineer of the Wilmington and Manchester Railroad Company, in consideration of the joint and mutual use of the said road so to be constructed by the South Carolina Railroad Company, as well as the joint and mutual use of their existing road through said swamp. The said Wilmington and Manchester Railroad Company agrees to pay to the South Carolina Railroad Company one-half of the cost of said work, including the bridges, the payment to be made from time to time as the work progresses, in such manner as to meet one-half of the payments which the South Carolina Railroad Company may be required to make in providing for the construction or execution of said work. It is also agreed that the iron to be used on said road or trestle shall be of the compound 'U' form, weighing seventy pounds to the yard, unless the engineers shall determine on a different pattern and weight.

"4th. The road from the junction of the Columbia and Camden branches to the junction of the Camden branch with the Wilmington and Manchester Railroad to be under a superintendent and and a party of hands directed by the engineer of the South Caro-

lina Railroad Company, who shall purchase all material for the repairs of said road. And all expenses and charges for the super-intendence and keeping up and repairs of that portion of the premises embraced in this agreement from the Western bank of the Wateree River to the junction of the Camden branch with the Wilmington and Manchester Railroad shall, from this date, be at the joint and equal expense of the parties to this agreement, and the like expenses for the other portion of the said premises, to wit: from the Western bank of the Wateree River to the junction of the Columbia and Camden branches shall be joint and equal betwixt the parties to this agreement from the commencement of the joint use of said premises herein provided for.

"5th. A station building (for the joint and mutual use of the two roads, as now embraced in this agreement,) three hundred feet long and forty feet wide, with a platform, on brick pillars, equal to twelve thousand superficial feet (these dimensions to be subject to modifications by the engineers of the two companies hereafter) to be erected at the junction of the Columbia and Camden branches, said building and necessary turnouts to be constructed under the direction of the Superintendent of the Wilmington and Manchester Railroad, who shall be authorized to confer freely with the engineer of the South Carolina Railroad Company; the cost of such con-struction and the expenses incident thereto to be paid by the two companies in equal portions.

"6th. Each of the parties of the first and second parts to pay to the other one-half of the amount received from the transportation of passengers and mails on the premises embraced within this agree-ment, said amount to be at the same rate per mile as charged the same passengers on each road, each party to pay the other for each car load of freight they may transport on the same premises two dollars and fifty cents. The road between the two junctions afore-said to be used by each party, without hindrance or obstruction, according to the following conditions, viz.: All the road between the junction of the Wilmington and Manchester Railroad and the Camden branch and the junction of the Camden and Columbia branches, (being the premises embraced in this agreement,) to be used each alternate hour by the parties to this agreement, except with passenger trains, which are allowed to follow within a half mile of each other, and provided there shall be no delay to pas-senger trains of either party, freight trains in all cases to keep out

of the way of passenger trains. The times of running of all trains to be regulated by schedule and a clock at each station.

"7th. Each company to offer every facility for the transportation of passengers and freight, and to be provided with baggage crates for through baggage, which shall be checked by each company over the road of the other, and each company to sell tickets over the road of the other if required; the arrangements for baggage freight on crates to go into effect as soon as the Superintendents of the two companies shall determine.

"8th. It is also covenanted and agreed that the arrangements for running the freight and mail and passenger trains on that portion of the Camden branch of the South Carolina Railroad, herein provided for, from its junction with the Wilmington and Manchester Railroad to the junction of the Camden and Columbia branches of the South Carolina Railroad shall commence so soon as the Superintendents of the two roads shall determine, and the interest on the bonds herein provided to be given by the Wilmington and Manchester Railroad Company in the second clause of this agreement, as well as the interest on the fourth of the estimated cost of the road from the Wateree River to the junction of the Wilmington and Manchester Railroad, (the estimate to be made by the Superintendents of the two companies,) shall commence running and be paid by the said Wilmington and Manchester Company to said South Carolina Railroad Company so soon as the joint use of said section of road herein provided for shall commence, and the divisions of receipts specified in the sixth section of this agreement do commence likewise and take effect from the said commencement of the joint use of said section of road as aforesaid.

"Witness the signatures of the Presidents of the South Carolina Railroad and of the Wilmington and Manchester Railroad Companies, and the corporate seals of said companies respectively.

["s. c. r. r. co. seal.]              JOHN CALDWELL,
                                   "President S. C. R. R. Co.
"Witnesses: J. R. Emery, John Samuel Bee.
["w. and m. r. r. co. seal.]    ·    W. W. HARLLEE,
                                   "President W. and M. R. R. Co.
"Witnesses: D. K. Davis, C. F. Godbold."

IV. That all the matters and things reciprocally to be performed by each of the said contracting parties have been performed by the

South Carolina Railroad Company and were performed by the Wilmington and Manchester Railroad Company until the property, powers and privileges of the said corporation were transferred to and vested in the defendants, under the name and style of the Wilmington, Columbia and Augusta Railroad Company.

V. That the railroad constructed and owned by the Wilmington and Manchester Railroad Company terminated at or near Manchester, and that the connection of the said corporation with the South Carolina Railroad, and with railroads South and West, and the location of the terminus of said road at Kingville, were solely under and by virtue of the foregoing contract and the rights thereby acquired, and that the rights and interests thus acquired and held were essential to the use and enjoyment of the corporate franchises granted to the Wilmington and Manchester Railroad Company.

VI. That on or about the      day of            , William F. Walters, Benjamin F. Newcomer and D. Willis James, for themselves, and as trustees for others, under decrees of sale for the purpose of foreclosing the various mortgages made by the Wilmington and Manchester Railroad Company, became the purchasers of all and singular the estate, property and effects of said company, and all the rights, privileges and franchises of said company connected with and relating to said railroad or the construction, maintenance or use thereof between its Eastern terminus at Wilmington and its Western terminus at Kingville, and subsequently, by Act of the Legislature of South Carolina, approved March 1, 1870, the said purchasers were incorporated as a body politic and corporate under the name of the Wilmington and Carolina Railroad Company, "or by such other name as a majority in interest of the persons who are purchasers as aforesaid may designate and adopt at their first meeting after the passage of this Act." And at the first meeting after the passage of said Act a majority in interest of the purchasers adopted the name of the Wilmington, Columbia and Augusta Railroad Company as the style and name of the corporation.

VII. That among the rights, privileges and property of the Wilmington and Manchester Railroad Company thus sold and purchased was the interest of the said company in the above recited contract, and the nine miles of road embraced therein, and under and by virtue of said sale and said Act of incorporation the Wilmington, Columbia and Augusta Railroad Company became the

successors and assignees of the Wilmington and Manchester Railroad Company, and substituted for them in all the rights which the Wilmington and Manchester Railroad Company had in said nine miles of railroad between Camden Junction and Kingville, and entitled to all the benefits and privileges of the contract above recited, and liable for all the duties and obligations to be performed under the contract by the party using and enjoying the privileges and benefit of said contract.

That after the sale and incorporation aforesaid, the Wilmington, Columbia and Augusta Railroad Company assumed, exercised and enjoyed, up to the first of January, 1872, all the benefits and privileges of said contract in like manner and to the same extent as the Wilmington and Manchester Railroad Company, and also have, up to a recent period, to wit, the first day of December, 1871, performed all the obligations of said contract in like manner and to the same extent as the same were performed by the Wilmington and Manchester Railroad Company, and by reason thereof and the purchase and incorporation aforesaid the said Wilmington, Columbia and Augusta Railroad Company became, and are, parties to said contract above recited.

VIII. That in and by the contract hereinbefore recited it is provided that the repairs of the railroad from the junction of the Columbia and Camden branches (Kingville) to the Camden junction shall be made under the direction of the South Carolina Railroad Company, its officers and agents, and that the expense thereof shall be jointly and equally borne by the parties to said contract; that, in pursuance of said contract, the plaintiffs have repaired the railroad embraced in said contract, and have incurred expense therefor to the amount of $3,005.35, as appears by the bill of items hereto annexed; that said expenses are, by the contract, equally to be borne by the plaintiffs and defendants; that the plaintiffs have demanded payment of the one-half thereof from the defendants, but the defendants have refused to pay the same.

Wherefore the plaintiffs demand judgment against the said defendants for the sum of fifteen hundred and two dollars and sixty-seven cents, ($1,502.67,) with interest and costs of this action.

The answer stated:

1. Denies that they are indebted to the plaintiff in the sum of money set forth in the complaint or in any part thereof, or that they have ever undertaken to pay the same or any part thereof.

2. For further defense, the defendant alleges that the said defendant is and always has been an entire stranger to the estate, right or title of the plaintiffs or of any other person in the land, railway or franchises set forth and described in the contract alleged in the complaint to have been made between the plaintiff and the Wilmington and Manchester Railroad Company, and that they never have claimed and do not now claim any right, interest or estate therein, or in any part thereof.

3. And for further defense, the defendant alleges that on the 5th, January, 1870, W. T. Walters, B. F. Newcomer and D. W. James, trustees, purchased at a sale at public auction, made under decrees regularly made by the Courts of North and South Carolina, under foreclosure of mortgage, all that, the railroad extending from Wilmington, in North Carolina, to Wateree Junction, near Manchester, in South Carolina, together with the rolling stock and franchises of the Wilmington and Manchester Railroad Company, and that the same were duly conveyed to the said trustees under the authority of the said Courts. That afterwards by an Act of the Legislature of South Carolina, approved March 1st, 1870, the said purchasers and their associates were incorporated and made a body politic and corporate, under such name as they might choose to adopt; that they have adopted the name and style of Wilmington, Columbia and Augusta Railroad Company, by which they are now known; and that no part of the railroad or corporate franchises so conveyed or granted to the defendant extends over or includes any portion of the railroad described in the contract alleged in the complaint to have been made between the plaintiff and the Wilmington and Manchester Railroad Company.

4. And for further defense, the defendant alleges that when possession was taken of the Wilmington and Manchester Railroad by the said purchasers and by this defendant, they found that portion of the railroad belonging to the plaintiffs which lies between Wateree Junction, near Manchester, and the junction of the Camden and Columbia branches, in possession of the officers, section masters and hands of the Wilmington and Manchester Railroad Company, and used by them for the transporation of their cars between Wateree Junction, near Manchester, and the said junction; that they were informed that the said South Carolina Railroad Company, finding their Camden branch unprofitable, had permitted the Wilmington and Manchester Railroad Company to have the

use of said portion of road for their own convenience as long as they would keep it up at their own expense; that the defendants thereupon continued to use the road in the same way without any contract with the plaintiff, keeping up and running the road at their own separate expense until the 23d November, 1871, when the defendant received a note from their Vice-President in the following words:

                              COLUMBIA, S. C., November 23, 1871.

J. C. WINDER, *Superintendent, Wilmington, N. C.:*

DEAR SIR: We will terminate the arrangement between Mr. McRae and Mr. Peake, by which you maintain the nine miles of our track between Manchester Junction and Kingville, on the 1st proximo, and, resuming possession thereafter, operate the road according to the original contract.

          Yours truly,

                    ALFRED TYLER, Vice-President.

To which the defendants, on 30th of the same month, replied that they claimed no right to interfere with the management of its own road by the South Carolina Railroad Company, and that the defendant has made no contract with the South Carolina Railroad Company, and is under no obligation to it in any way whatever in relation to the nine miles of its track between Manchester Junction and Kingville; that from the date of the said notice by the plaintiffs the defendant ceased making any use of the portion of the road aforesaid belonging to the plaintiff, and has never claimed and does not now claim any right or interest therein.

5. And for further defense, the defendant alleges that the sale made to the said W. T. Walters and others, trustees, was under decrees to foreclose certain mortgages duly executed by the Wilmington and Manchester Railroad Company, as follows: On 1st May, 1851, to Edward Sanford, to secure $600,000; to the same, on the 1st March, 1853, to secure $200,000; to George W. Dargan, on 12th April, 1855, to secure $200,000; and to M. K. Jessup, on 7th May, 1866, to secure $2,000,000; and each of the said mortgages was duly recorded within thirty days from the date thereof; that the contract alleged in the complaint to have been executed between the plaintiff and the Wilmington and Manchester Railroad Company bears date subsequent to the two first mortgages, and that at the time of the purchase by the said W. T. Walters and others,

trustees, and until the 23d November, 1871, the defendant had no notice of the said alleged contract.

At the hearing a number of witnesses were examined on both sides, but the testimony it is unnecessary. to give. The following proceedings, as stated in the brief, then took place:

The defendant's counsel moved the Court to instruct the jury as follows:

1. That the written contract between the South Carolina Railroad Company and the Wilmington and Manchester Railroad Company imposes no obligation on the defendant to perform the same as purchasers of the said Wilmington and Manchester Railroad.

2. That the said contract, even were it held to be a real covenant running with the land, could only bind a party claiming the use of the nine miles of road constructed under such contract, and that, inasmuch as defendants claim no right in said nine miles, they are not bound by said contract.

3. That even were the contract held to be a real covenant, running with the land, the defendants, being entitled to the benefit, are entitled to renounce the same, and, having made such renunciation, they are no longer bound to perform the duties charged by the contract on the other party, to wit, the Wilmington and Manchester Railroad Company.

4. That the new arrangements made between the two roads during the war discharged the obligation of the original contract so far as the defendants are concerned, and such obligation could not be revived by Mr. Tyler's notice.

5. That some of the mortgages under which the sale to the defendants was made, being prior in date to the contract between the plaintiff and the Wilmington and Manchester Railroad Company, the purchase by the defendants takes precedence of any lien or obligation created by the said contract, and the defendants are not bound to perform the said contract.

6. That the plaintiff cannot in this action claim any recovery for a breach of the condition imposed by the State on the Wilmington and Manchester Railroad.

By the Court: *Gentlemen*—I had made up my mind to charge the jury in a certain way, so that you could except to the charge, because I see grave questions arising out of this case which can hardly be settled in a Court below.

*Gentlemen of the jury:* I intend to charge you to this effect: that if you find that the Wilmington, Columbia and Augusta Railroad Company had by any act of theirs endorsed this contract, sanctioned this contract upon which the South Carolina Railroad Company sues, then they are liable under that contract. That is a question of fact for the jury. I intended to further charge you that if the Wilmington, Columbia and Augusta Railroad Company acted under this contract or endorsed or sanctioned it, that they had the right to rescind it. But I won't make that charge to you at all. I will say that in case they endorsed or accepted this contract or acted under it, then they are liable for the amount claimed by the plaintiff; and let the case go up upon that charge. That is what I say to you. And if they did not saction it or did not act upon it, then I don't think they are liable.

By Mr. Connor: Your Honor does not charge upon the question of rescinding?

By the Court: No; I think that properly comes up in another way.

The jury found the following verdict:

We find for the plaintiff fifteen hundred and two 67-100 dollars, with interest from 29th February, 1872.

Whereupon defendant's counsel gave notice of exception:

I. Because His Honor erred in charging the jury that if they were of opinion that the defendant had in any way sanctioned the contract of August 22, 1853, they should find for the plaintiff. Whereas the defendant then insisted, and now insists, that as the contract created an uncertain interest in land, and was not to be performed within the year, the law required that before it could be deemed a contract as between the South Carolina Railroad Company and the defendant it should have been in writing.

II. Because the contract of 22d August, 1853, was in no respect obligatory on the defendant, and the Judge erred in charging the jury that they might find a verdict thereon against the defendant.

The defendant gave notice that it appealed on the following grounds:

1. Because the jury have found a verdict setting up the contract on other than evidence in writing, when the law requires that the particular contract set up shall be in writing, duly signed by the party or his authorized agent.

2. Because the evidence before the jury was not sufficient to authorize the verdict.

*Memminger, Pinckney & Jervey*, on a motion to dismiss the appeal made by the plaintiff, filed the following points and authorities:

I. "That no exceptions whatever were taken to the charge and rulings of the Judge before the jury left the bar."

We deny that exceptions were necessary to be taken under the circumstances of the case, and maintain that the refusal of the Circuit Judge to charge in accordance with a specific prayer is a sufficient notice of exception on which to base an appeal.—*Fox* vs. *Railroad Company*, 4 S. C., 543; *Madsden* vs. *Phœnix Insuranae Company*, 1 S. C., 29; *Abrahams* vs. *Kelley & Barrett*, 2 S. C., 237; *Potter*, ads. *Chadsey*, 16 Abb., 146; Chitty's Gen. Prac., Vol. 3, 914.

II. "That the errors now alleged in said charge were not made the subject of specific prayer for instruction, and, therefore, there are no errors of law properly before the Court for correction."

We admit, as a proposition of law, the necessity of a specific prayer for instructions, but submit that such prayer was made and refused by the presiding Judge.

III. "An appeal does not lie from the order of a Circuit Judge granting or refusing a new trial for error of fact in the verdict."

We deny that our motion for new trial was based on error of fact, but on error of law.

"The Supreme Court shall have exclusive jurisdiction to review upon appeal * * * * an order affecting a substantial right made in an action when such an order, in effect, determines the action and prevents a judgment from which an appeal might be taken or discontinues the action, and when such order grants or refuses a new trial."—Code, § 11.

New trial for error of law is a matter of strict right and not discretionary with the Court.—Grah & Walter, Vol. 1, 262, 267; *Potter* ads. *Chadsey*, 16 Abb., 146.

Questions of strict right are appealable.—*Tracy* vs. *First National Bank of Selma,* 37 N. Y. Rep., 523 ; *Byrd* vs. *Smalls,* 1 S. C., 388.

And innumerable cases excepting discretionary orders from appeal.—*e. g., Tanton* vs. *Grah,* 8 Abb., N. S., 385; *Forrest* vs. *Forrest,* 25 N. Y., 501; *Briggs* vs. *Vanderburg,* 22 N. Y., 467.

Motion for new trial no waiver of appeal.—*United States* vs. *Dashiel,* 4 Wall., 182.

And, upon the exceptions, contended that the case presented by the pleadings asserted that the defendants were liable, as assignees, to perform a written contract made between the plaintiffs and the Wilmington and Manchester Railroad Company on the 22d August, 1853. The defendants denied their liability, and the case went to trial on that issue.

The Circuit Judge charged the jury as follows :

*Gentlemen of the jury:* I intended to charge you to this effect : That if you find that the Wilmington, Columbia and Augusta Railroad Company had, by any act of theirs, endorsed this contract, sanctioned this contract, upon which the South Carolina Railroad Company sues, then they are liable under the contract. That is a question of fact for the jury. I intended to further charge you that if the Wilmington, Columbia and Augusta Railroad Company acted under this contract, or endorsed or sanctioned it, they had the right to rescind it. But I won't make that charge to you at all. I will say that in case they endorsed or accepted this contract, or acted under it, then they are liable for the amount claimed by the plaintiff; and let the case go upon that charge. That is what I say to you. And if they did not sanction it or did not act upon it, then I don't think they are liable.

This charge substantially sustained the defense of the defendant, and ruled that they were not liable as assignees on a covenant running with the land; but it presented an entirely new case, namely, whether a new contract, express or implied, had not been made by the defendant.

On this new issue the defendants insisted that they were not liable in this action, and that they could not be made liable in any event, unless the new contract was proved to be in writing, signed by the defendant, according to the requirements of the Statute of Frauds.

The provisions of that statute bearing on the subject are contained in the first and fourth Sections, Rev. Stat., 479, 480.

The first Section of the statute enacts that all leases, estates, interests of freehold, or terms of years, or any uncertain interest of, in, to or out of any messuages, manors, lands, tenements or hereditaments made or created by livery or seizin only, or by parol, and not put in writing by the parties so making or creating the same, or their agents thereto, lawfully authorized by writing, shall have the force and effect of leases at will only, and shall not, in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making such parol leases or estates or any former law or usage to the contrary notwithstanding.

The fourth Section enacts that no action shall be brought upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them, or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

The interest created by the contract made with the Wilmington and Manchester Railroad, and which it was claimed that the defendant had assumed, is clearly an uncertain or indefinite interest in the hereditament or right of way of the South Carolina Railroad. There was no agreement in writing between the South Carolina Railroad Company and the Wilmington, Columbia and Augusta Railroad Company. So that whatever interest they took was clearly given by parol. Under the provisions of the statute such an interest could take no greater force than a lease at will. Such a lease would have been determined by Mr. Tyler's notice and the acceptance thereof by the defendant, and, consequently, after that date there was no further contract existing between the two companies. The Circuit Judge therefore erred when he declined to charge the jury that the defendants had the right to rescind.

Upon the fourth Section of the statute two questions arise:

1. Was this action brought upon a contract or sale of lands, tenements or hereditaments, or any interest in or concerning them, within the meaning of that clause of the fourth Section?

2. Was the action brought upon an agreement that was not to be performed within the space of one year from the making thereof?

*First.* As to a contract or sale of an interest in lands, tenements and hereditaments.

The plaintiff contends that the defendant undertook to pay one-half the expense of bridging and keeping up the section of railroad. But upon what consideration? Upon a contract that the defendant should have the permanent use thereof. But the only contract in writing produced is a contract with the Wilmington and Manchester Railroad. There is no evidence of any contract with the defendant, except by parol. The defendant, therefore, has no right which he can assert to the occupation of the road. There is, therefore, no contract between them which the law will recognize.

This principle of law is very clearly put by Mr. Batten in his treatise on specific performance. He says: "The consideration must flow from both parties; a promise to pay money does not make a contract, unless there be reciprocal obligation. In contracts everything requisite ought to concur, as the consideration on the one side and the promise or sale on the other side. In fact, although the consideration is generally spoken of as being the motive for the party's agreeing to do or not to do a particular act, yet in the eyes of the party who supplies that motive, it is the agreement of the other party. But not only is it the principle of law that both parties must receive a benefit from the contract, but it is also the rule that the law only considers that as a benefit, in cases of contracts purely executory, which it can assure to the other party. Each party at law must be bound to confer a benefit on the other or there is no agreement at law. It is always an answer to a bill for specific performance of an agreement by one party, that if the defendant were to seek specific performance of the same agreement against the plaintiff he could not obtain it; both parties must be bound, otherwise there can be no valid agreement."

These doctrines are amply supported by the authorities cited by Mr. Batten, and we are brought to inquire how the defendant could claim a permanent interest in the lands and tenements of the plaintiff, where that plaintiff has made with him no contract in writing. The mutuality is destroyed, and the result is that no legal contract has been made.

But the evidence in the case carries this objection even further. The only contract proved between the plaintiff and defendant is that implied from the use of the road by the defendants after their purchase. This contract was terminated by the notice of Mr.

Tyler to the defendant, and the defendants had thereafter no rights whatever in the road, as they expressly disclaimed any connection with the contract of August, 1853.

In *Thompson* vs. *Gregory*, (4 John., 61,) it was held that the right of erecting mill dams on another's land, and overflowing land for the use of mills, being an incorporeal hereditament, could pass only by deed; and that the assignment of such an interest, since the Statute of Frauds, must be in writing.

In *Mumford* vs. *Whitney*, (15 Wend., 380,) an agreement that a party may abut and erect a dam for the creation of a water power for the use of mills was held less void if made by parol. The Court say "all the cases agree that a permanent interest in the land can be transferred only by writing." The Court proceeds to discriminate between a temporary and permanent interest. "A license, say they, is an authority to enter upon the lands of another and do a particular act, or series of acts, without possessing any interest in the lands; it is founded in personal confidence,—is not assignable, and is valid, though not in writing. But the conferring of a right to enter upon lands, and to erect and maintain a dam as long as there shall be employment for the water power thus created is more than a license; it is the transfer of an interest in lands, and to be valid must be in writing.

*Second.* This is a contract not to be performed within a year from the making thereof.

Its very terms show beyond a doubt that it was to continue for years.

The famous Boydell's Shakspeare case shows that such a contract must be in writing.—*Boydell* vs. *Drummond*, 11 East., 143. The rubric of that case reads thus:

"If it appear to have been the understanding of the parties to a contract at the time that it was not to be *completed* within a year, though it might and was in part performed within that time, it is within the fourth clause of the Statute of Frauds, and, if not in writing, signed by the party to be charged, it cannot be enforced against him."

The words of Lord Ellenborough, on page 156, are very significant: "It has been argued that an inchoate performance within a year is sufficient to take the case out of the statute; but the word used in the clause of the statute is *performed*, which, *ex vi termini*, must mean the *complete* performance or consummation of

the work. Therefore, to exclude perjury and to perpetuate the true terms of contracts which were not to be performed within a year, there is no doubt that the statute meant a consummate performance within that time."

*Brasegirdle* vs. *Heald*, (1 Barn and Ald., 723,) was an action for breach of a verbal contract made on 27th May for a year's service to commence on 30th June following: *Held*, That there could be no recovery, as the contract must be in writing and came within the fourth Section of the Statute of Frauds.

So, in *Drummond* vs. *Burrell*, (13 Wend., 307,) where a party contracts by parol to work for another for the term of two years, and quits the service at the end of six months, the contract is void, not having been reduced to writing.

But it is objected that no formal exception was made to the Judge's charge, and therefore it is now too late to make these exceptions.

But it will be seen that the Judge had no such idea, for he expressly says: "let the case go up upon that charge." Now, could it go up unless excepted to? and if the Judge understood that his charge was excepted to, was it necessary to repeat what was already understood? The case made on the pleadings was a case of written agreement with another party, which agreement, it was claimed, bound his assignees. That was the case which the defendants expected to meet and upon which their counsel had prepared exceptions in writing. But upon the trial the issue was changed to a new agreement by parol. To this the defendant objected the Statute of Frauds and fully argued his objections. The Judge ruled substantially for the defendant on the case in the pleadings, but ruled against him on the parol contract, saying: "let the case go up upon that charge." Surely there was no surprise, and there was full notice of exception allowed by the Judge.

But, to avoid all embarrassment from this objection, the defendant's counsel immediately moved for a new trial on the ground that the jury found a verdict setting up the contract on other than evidence in writing, when the law required that the particular contract set up should be in writing duly signed by the party or his authorized agent. This motion raised the present question now before the Court, and, being a purely legal question, is now regularly before this Court upon appeal from the ruling of the Judge refusing a new trial.

The appellant, therefore, respectfully submits that he has been held liable upon a contract to which he never was a party, and by evidence which was insufficient to establish the contract, and that a new trial should be ordered.

*Conner,* contra :

That there was a definite written contract fixing the rights of the parties.

That under the charter, the Eastern terminus of the Wilmington and Manchester Railroad Company was Wilmington, and its Western at Manchester, nine miles from Kingville.

That under the contract, and by virtue of it alone, the Wilmington and Manchester Railroad Company ran their trains from Manchester to Kingville.

That when the Wilmington and Manchester Railroad was sold under foreclosure, it was sold with all the rights and privileges thereto appertaining. (See advertisement and deed of post conveyance.)

That among the rights and privileges was the right to run their trains from Manchester to Kingville.

That when Messrs. Newcomer, Walters and others purchased the Wilmington and Manchester Road they succeeded as owners to the property, franchises and rights of the former stockholders or owners. There was a substitution of ownership. The corporation remained unchanged. The new owners took the corporate property, its franchises, privileges and obligations, exactly as they had been held by the former owners—the debts covered by the mortgage proceedings excepted, for these were extinguished by the sale.

That subsequently the purchasers applied for direct Act of incorporation, and by Act of 1870, 14 Stat., 389, the corporators were described as purchasers of the property of the Wilmington and Manchester Railroad Company, "together with all the rights, privileges and franchises of said company connected with and belonging to said *railroad,* or the *construction, use* or *maintenance* thereof between the Eastern terminus, at Wilmington, and its Western terminus, at Kingville."

It would be dificult to find words to express more clearly the idea of a purchase by Newcomer, Walters & Co. of this contract or privilege of the Wilmington and Manchester Railroad, not

only " connected with " and belonging to said railroad, but abso-
lutely essential to the use and maintenance thereof between the two
termini of Wilmington and Kingville.

And the corporators, the purchasers, were incorporated " to keep
up, maintain, use and operate the *aforesaid line* of railroad," viz.,
the line of railroad between Wilmington and Kingville.

There was not only a purchase of the contract, but the incor-
poration of the privileges and benefits of that contract into the
charter which created the present defendants.

With this contract, the purchase and the Act of incorporation of
1870, could the South Carolina Railroad have prevented the Wil-
mington, Columbia and Augusta Railroad Company from running
its trains through to Kingville?    Could it have stopped the latter
at Manchester, in the swamp, and shut it off from connection with
the great railway lines of the West and South?  Clearly not.
Because the contract based on valuable consideration stipulated
for joint, mutual, permanent use of the nine miles, and as long as
the obligations of the contract were performed the South Caro-
lina Railroad Company could not withhold the benefits.—*Pollard*
vs. *Maddox*, 28 Ala., 325; *Pierce* vs. *Emory*, 2 Redfield's Ruling
Cases, 639, 640.

But the contract is not *unilateral*—binding on one only.  He
who takes the benefit takes the burden.

The jury have found by their verdict that the defendants en-
dorsed and accepted this contract, and acted under it and sanc-
tioned it, and I apprehend that it is not necessary to go into any
examination of the testimony to support their finding.

The acceptance and endorsement of it makes it the contract of
the Wilmington, Columbia and Augusta Railroad Company as
fully as if they had originally made it, and they are, therefore,
bound by its provisions.

But it is said that the contract created an uncertain interest in
the land, and is within the Statute of Frauds, and must be in
writing.

To this we reply :

1. That the point, although made in the ground of appeals, is
not contained in the prayer for instructions, and unless matter of
law is specifically brought to the attention of the Judge and he
requested to charge thereon, his omission to do so cannot be as-
signed as error.—See *Fox* vs. *R. R. Co.*, 4 S. C., 544.

2. That the contract is not within the Statute of Frauds; that it does not create any interest in lands whatever.—*Swartz* vs. *Swartz*, 4 Barr, (Penn.,) 358; *Great Northern R. R.* vs. *Manchester and Sheffield R. R.*, 10 E. Law and Eq., 15.

The complaint avers that "the lands and rights of way used in the construction of said branch (from Kingville to Camden) were and are owned by the plaintiff solely."

And the contract is only for the use of the track and not for an interest in the land.

The defendant further claims in his argument that, although no exceptions were tendered, still, as he raised the legal issue in the motion for new trial, the question is now properly before this Court.

To this we reply that it must appear that some question of law was involved which influenced the decision of the Judge, (*Byrd* vs. *Small*, 2 S. C., 388,) and the record shows no such question.

It does not appear on the record that the defendant objected to the introduction of the evidence or that the objection was overruled, or that exception to such ruling by the Judge was taken, and all three of these essentials must have occurred on the trial in order to raise a question for this Court.

1. *Graham* vs. *Waterman,* on new trial, marginal, page 179.

2. *Graham* vs. *Waterman,* on new trial, 656, 657, 658.

Nor can the omission to take exception at the proper time be cured by embodying in a motion for a new trial the points which should have been raised and decided on the trial. Not taken then, they are waived.—*Ibid.*

Any other conclusion would confound the well-founded distinctions which exist in the powers and functions of the Appellate and Circuit Courts.

March 15, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The objection that there are no exceptions to the charge of the Circuit Judge is not well taken. It appears that the defendants requested the Judge to charge certain propositions of law; that the Judge not only declined to make such charge, but forebore from making any comment upon the propositions advanced by the defendants, on the ground, as would seem from his charge, that such question could properly come up in some other way for review. It appears clearly that the propositions relied upon by the defendants, as stated in their request to charge, were brought to the

attention of the Court, and that in making the charge the Judge understood and intended that the defendants would have the right to be heard as to such matters upon appeal. This is all that is required to constitute an exception, although in point of form a request to note an exception, after the Judge had determined not to charge as requested by the defendants, was the strictly regular course. It does not follow in every case where a party submits propositions with a request to charge, and when the Circuit Judge charges in certain particulars at variance with such request, that the party making such request is to be deemed as excepting to such charge to the extent of such variance.

It should appear by the record that the Court was apprised that the party intended to rely on the propositions advanced by way of exception. In the present case that fact appears by the language of the charge itself, and there is a substantial compliance with the rule in question.

But the exception must be limited to the matters embraced in the request to charge. Only those exceptions that were made before the jury retired to their room can be heard by us.—*Fox* vs. *Railroad Company,* 4 S. C., 543.

The memorandum contained in the brief, as follows: "Whereupon defendants' counsel gave notice of exceptions," must be regarded as referring to some act performed after the rendition of the verdict. "Whereupon" must be regarded as relating to something done subsequent, in point of time, to the event last stated, which was the finding of the jury.

Under these circumstances the exception appears to that part of the charge that directed the jury to find the amount claimed by the plaintiff, in the event that they found as matters of fact that the defendants had voluntarily assumed the benefits or submitted to the obligations of the contract on which the plaintiff sued. It is not a question before us, then, what the proper remedy upon the contract in suit was, but whether there was anything in the law of the case that rendered the charge improper in omitting to lay before the jury the propositions embraced in the request to charge. All that appears to have been actually charged is as follows: "I will say in case they (defendants) endorsed or accepted this contract, or acted under it, they are liable for the amount claimed by the plaintiffs; and let the case go upon that charge. And if they did not sanction it nor act upon it, then I don't think they are liable."

In order to understand the bearing of the defendants' proposition, it is necessary to look to the nature and effect of the contract on which the plaintiffs brought their action.

Prior to the date of that contract, the plaintiffs had constructed, owned and operated a line of railroad called the Camden branch, that included nine miles, extending between Kingville and a point near Manchester, the terminus of the road of the Wilmington and Manchester Railroad Company. The last named company, an incorporation distinct from the present defendants, desiring to obtain the use of that nine miles for the purpose of making Kingville a terminus of their road, made a contract with the plaintiffs for the purchase of such right. The contract was in writing under the seals of the respective corporations, and bore date August 22, 1853. The object of the contract is stated as follows :

"That the South Carolina Railroad Company agrees to admit the Wilmington and Manchester Railroad Company to the joint, permanent and mutual use of so much of the Camden branch of their road as extends, &c., * * * upon the terms, conditions and covenants expressed of and concerning the same."

These covenants and conditions embraced the considerations, past and future, upon which the respective parties covenanted together. The Wilmington and Manchester Railroad Company, "in consideration of the joint and mutual use of so much of the road of the South Carolina Railroad Company granted to them as aforesaid," agree to pay the plaintiffs " one-half of the estimated cost of the construction of the said road," ascertained by the contract at the sum of $14,000 per mile. All expenses for maintaining the road between the points indicated to be equally borne by the parties. Each party to use the road for the conveyance of passengers and freight under regulations for mutual convenience and safety. Each party to pay the other a certain proportion or amount of its receipts for the conveyance of passengers and freight earned upon the line jointly occupied.

The contract certainly transfered to the Wilmington and Manchester Railroad Company a servitude in the land in the nature of a right of way jointly with the plaintiffs, if it did not become the means of transferring to that company a recognizable interest in the land itself. It will not be necessary to fix the full extent of interest that passed thereby to the Wilmington and Manchester Railroad Company, and it is premature to establish the full right of

the parties under the contract, these rights not having been submitted to us or discussed by counsel, in view of the very limited influence of the contract on the questions brought before us by the defendants' exceptions. As it regards the superstructure, including bridges and the iron, the position of the parties is the same as if they had united with a common fund in their original construction under a contract for joint uses.

The present defendants were incorporated March 1, 1870.—14 Statutes, 389. The Act recites the fact that the parties incorporated had become purchasers, under various mortgages executed by the Wilmington and Manchester Railroad Company, "of all and singular the estate, property and effects, including the entire line of railroad, the engines, rolling stock, machinery, machine shops, depots and other tangible property and effects hereafter belonging to said company, connected with or related to said railroad, or the construction, maintenance or use thereof, between its Eastern terminus at Wilmington and its Westerly terminus at Kingville, South Carolina." The Act confers corporate powers upon the purchasers of such property and their associates.

The mortgages are not set out in the brief. A memorandum of the terms of the Referee's advertisement and of a portion of the deed of conveyance is appended to the brief and argument.

It is in proof that the only access that the Wilmington and Manchester Railroad Company had to Kingville was by means of the right of way secured to that company by the contract in suit, and that the defendants under their charter used and occupied their right of way after they had constructed a line to Columbia, independent of that portion of their road that connected with the Camden branch.

The fact of claiming under and occupying the right of way in question under the terms and recitals of their charter must be regarded as at least *prima facie* proof that the defendants became the purchasers from the Wilmington and Manchester Railroad Company of the rights, whatever they may be, that the last named company acquired under the contract in suit.

The first proposition, namely, that the contract imposed no obligation on the defendants as purchasers to perform the same, could not properly have been charged as stated, for it would have led the minds of the jury to an erroneous idea of the law. While it may be true that the contract did not directly bind any other

persons than the contracting parties, yet, indirectly, it did, in virtue of certain transactions based upon it, giving rise to relations referred by operation of law to the contract itself for the purpose of making them certain.

The second proposition is based on the idea that the defendants do not claim the use of that part of the road in dispute. This fact is of no legal importance. They are, as matter of law, invested with the right conferred by the contract, and the plaintiff's title in the land and railroad is limited, encumbered by the rights held by the defendants. The rights granted by the contract are not alleged to have been removed or lost by non-user with lapse of time, nor can a disclaimer by plea affect the right of recovery for transactions occurring before it is pleaded.

The third proposition claims that the defendants, even if bound by the contract, have availed themselves of the right to renounce that which the contract confers and thus escape its obligations. There is no proof that the rights acquired by the defendants have been restored to the plaintiff or parted with in any manner; for all that appears, either the defendants or their creditors might make the right of way granted by the contract available if they sought to do so.

The fourth proposition alleges that a temporary arrangement made by the parties by parol and terminable at the pleasure of parties, by which, for the time being, the requirements of the contract as to certain particulars were not to apply, had the effect to destroy the contract. The answer to this is the same as to the last considered. While defendants are in a position to assert at any moment the right in and upon the lands in question conferred by the contract, the term that entered into the consideration upon which the right was granted must be deemed in force.

The fifth proposition alleges that certain of the mortgages under which the defendants claim title were prior in date to the contract, and the mortgagees and those desiring their title under them stand upon a prior right to that of the contract. This proposition is not true, when, under the mortgage, the mortgagees have appropriated and disposed of the rights conferred by the contract. Having asserted their mortgage against rights called into existence subsequent to their mortgages, they must take such rights *cum onere.*

The sixth proposition is not applicable to the case in hand. The verdict included nothing, as far as appears, subject to the objection made in this proposition.

The additional objection stated in the notice of appeal was not taken in time; but under the view we take of the case it is unimportant, as we do not rest the right of the party upon any parol contract.

The motion must be refused.

*Moses,* C. J., and *Wright,* A. J., concurred.